# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| EFN WEST PALM MOTOR SALES, LLC <br> d/b/a NAPLETON'S WEST PALM BEACH <br> HYUNDAI and the FLORIDA DEPARTMENT OF <br> HIGHWAY SAFETY AND MOTOR VEHICLES <br> <br>     Plaintiff, <br> <br> v. <br> <br> HYUNDAI MOTOR AMERICA <br> <br>     Defendant. | Case No.: |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, EFN WEST PALM MOTOR SALES, LLC d/b/a NAPLETON'S WEST PALM BEACH HYUNDAI (the "Plaintiff" or "Napleton's West Palm") by way of Complaint and Demand for Jury Trial against the Defendant, HYUNDAI MOTOR AMERICA, LLC (the "Defendant" or "HMA"), alleges:

### Introduction

Plaintiff is an authorized Hyundai dealership. Defendant, the manufacturer/distributor of Hyundai vehicles, has proposed to terminate Plaintiff's franchise. This action is to challenge the proposed termination under certain provisions of Florida law. The Florida Motor Vehicle Dealer Act, s. 320.60 et seq. (the "Dealer Act") of the Florida Statutes protects dealers against unfair or prohibited franchise terminations. In order to successfully terminate a motor vehicle dealership, the manufacturer/distributor has the burden of proof and must show that it acted in good faith and with good cause as

further defined in the Dealer Act. Plaintiff contends that the Defendant will not be able to meet that burden and seeks relief from this Court.

## Parties

1. Plaintiff is an Illinois limited liability company with its principal place of business at 2301 Okeechobee Boulevard, West Palm Beach, Florida 33409.

2. Plaintiff is a franchised motor vehicle dealer as defined by Section 320.27(1)(c)(1), Florida Statutes, and operates a franchised motor vehicle dealership, where it sells and services Hyundai products pursuant to a franchise agreement (the "Dealer Agreement"), as defined by Section 320.60(1), Florida Statutes. *Attached as Exhibit A.* The Dealer Agreement incorporates "Standard Provisions" written by HMA.

3. Defendant is a California corporation with its principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. Defendant's registered agent in Florida is NRAI Services, Inc. at 1200 S. Pine Island Road, Plantation, Florida 33324.

4. Defendant is engaged in the business of distributing new motor vehicles and related parts and accessories in all 50 states, and is the sole authorized distributor in the United States of Hyundai branded automobiles to a nationwide network of franchised Hyundai dealers. Defendant is a manufacturer and distributor as defined by Sections 320.60(5) and 320.60(9), Florida Statutes, as it manufactures Hyundai brand vehicles and sells, and offers to sell, those vehicles to new motor vehicle dealers (including Plaintiff) in this State.

## Jurisdiction

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship and the amount in controversy exceeds the sum of

$75,000 exclusive of interest and costs. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. §§ 1965(a) and (d). Defendant has a registered agent in Florida and regularly conducts and transacts business throughout the State of Florida, including in West Palm Beach, Florida with Plaintiff. Further, HMA has obtained a license from the Florida Department of Highway Safety and Motor Vehicles to conduct business in Florida. Thus, HMA has the requisite minimum contacts with the State of Florida and this Judicial District. Moreover, in selling new motor vehicles to franchised dealers throughout Florida, HMA intentionally availed itself of the laws of Florida.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391(a) in that jurisdiction is founded solely on the basis of diversity, and Defendant, by virtue of its systematic and continuous business contacts in this District, resides in this District.

## **Facts Applicable to All Claims**

### Background on the Dealer Act

8. As a new motor vehicle dealership, Plaintiff is protected from certain conduct and threats made by motor vehicle manufacturers and/or distributors pursuant to the Dealer Act.

9. The Dealer Act is a remedial statutory scheme enacted to redress the economic imbalance and unequal bargaining power between large automobile manufacturers and local dealerships, protecting dealers from unfair termination of their franchise agreements and other retaliatory and coercive practices by automobile manufacturers. The harm that can be caused by manufacturers' abusive practices is

exacerbated due to the extremely concentrated market in which new motor vehicle dealers operate.

10. The Dealer Act entitles automobile dealers, like Plaintiff, to bring legal claims against an automobile manufacturer and/or distributor, like HMA, for damages, attorneys' fees and costs of the suit for the manufacturer's or distributor's failure to act in good faith in performing the terms of its dealer and/or franchise agreement, among many other bases.

11. Similar protective legislation has been enacted throughout the United States. The United States Supreme Court has recognized the importance and validity of these remedial statutes as explained by Justice Brennan in *New Motor Vehicle Board v. Orrin W. Fox Co.*:

> Dealers are with few exceptions completely dependent on the manufacturer for their supply of cars. **When the dealer has invested to the extent required to secure a franchise, he becomes in a real sense the economic captive of his manufacturer.** The substantial investment of his own personal funds by the dealer in the business, the inability to convert easily the facility to other uses, the dependence upon a single manufacturer for supply of automobiles, and the difficulty in obtaining a franchise from another manufacturer all contribute toward **making the dealer an easy prey for domination by the factory**. On the other hand, from the standpoint of the automobile manufacturer, any single dealer is expendable. The faults of the factory-dealer system are directly attributable to the superior market position of the manufacturer.

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 439 U.S. 96, 100 n. 4 (1978) (*quoting* S. Rep. No. 2073, 84th Cong., 2d Sess., 2 (1956)) (emphasis added).

12. The Dealer Act's express purpose is to:

> protect the public health, safety, and welfare of the citizens of the state by regulating the licensing of motor vehicle dealers and manufacturers, maintaining competition, providing consumer protection and fair trade and providing minorities with opportunities for full participation as motor vehicle dealers.

§ 320.605, Fla. Stat. (2020).

13. The Dealer Act necessarily trumps the terms of a franchise agreement (e.g., the Dealer Agreement) between a distributor (e.g., HMA) and its dealers (e.g., Napleton's West Palm). Thus, to create balance in an otherwise inequitable contractual relationship, Florida law overrides various provisions of a franchise agreement and provides Plaintiff with additional statutory protections.

Plaintiff's Dealership Operations

14. Plaintiff acquired the West Palm Beach Hyundai dealership in May 2006.

15. Plaintiff is part of the Napleton Automotive Group ("NAG") comprising part of a privately-held, multi-generational family run dealership group with locations currently in eight (8) states. Founded in 1931, the NAG organization, through its affiliated dealerships, sells twenty-five (25) different brands of new vehicles operating of forty-nine (49) locations including several in Florida. Edward F. Napleton is the principal and CEO of NAG.

16. NAG has a long-established record of maintaining highly successful dealerships in its portfolio.

17. By way of example, Automotive News, a trusted trade publication in the automotive industry, recently listed NAG as the 17th largest dealership group in the United States based on 2019 new vehicle sales and the 13th largest group in the United States based on 2019 used vehicle sales.

18. Dealerships operating under the NAG banner include numerous mass market and luxury/exotic brands such as Acura, Alfa Romeo, Aston Martin, BMW, Chevrolet, Chrysler, Dodge, Fiat, Genesis, Honda, Hyundai, Infiniti, Jeep, Kia, Lexus, Maserati, Mazda, Mercedes-Benz, Mitsubishi, Nissan, Porsche, Ram, Subaru, Toyota,

and Volkswagen.  Among these are Hyundai dealerships operated elsewhere in Florida as well as in Illinois, Indiana and Missouri.

### Plaintiff's Warranty Obligations Pursuant to the Dealer Agreement

19. Section 11 of the Standard Provisions contains Plaintiff's contractual obligations for warranty and recall service.  Plaintiff is meeting all of, and not in material breach of any of, the duties and obligations for warranty and recall service laid out in Section 11.

20. Plaintiff has also satisfied its other obligations contained within the Dealer Agreement.

21. Based on information and belief, HMA's recent actions discussed herein are not motivated by a good faith desire to remedy a breach.  Instead, Plaintiff contends HMA desires to retaliate against NAG, its affiliated dealerships, and affiliated persons due to past disputes and disagreements with HMA.

22. By way of example, HMA recently unilaterally removed Brian Napleton, NAG's dealer representative, from the Hyundai Dealer Advisory Council ("HDAC") to which he was elected by the Hyundai dealer body.  During his tenure on the HDAC, NAG's dealer representative was a strong advocate for the dealer community unafraid to disagree with HMA's executives including Chief Executive Officer Jose Munoz over policies advanced by HMA designed to benefit HMA at the expense of the dealers; and HMA made sure that it extracted their pound flesh from NAG for advocating for the interests of the dealer group.

### HMA Seeks to Audit Plaintiff

23. By letter dated October 26, 2020, Ms. Mary Bae, Senior Group Manager for HMA, informed Plaintiff that HMA sought a multi-faceted audit of Plaintiff's records. *Attached as Exhibit B.* HMA demanded Plaintiff provide numerous records in a particular format upon a mere three (3) days' notice. *Id* at 2.

24. On October 28, 2020, Mr. Les Stracher, General Counsel of NAG responded in writing raising concerns with: (i) the legality of the audit and concerns regarding Plaintiff's ability to comply on short notice during a pandemic; and (ii) its past disputes in connection with Plaintiff's business relationship with HMA.[1] *Attached as Exhibit C.*

25. On November 6, 2020, Mr. J. Andrew Bertron, outside counsel for HMA, responded to the October 28, 2020 letter, supra. *Attached as Exhibit D.* At the same time as Mr. Bertron's response completely ignored the legal arguments in Mr. Stracher's letter, HMA agreed to delay the audit and unilaterally selected January 18, 2021 as the rescheduled date. This, again, was done in the middle of the COVID-19 pandemic without any consideration of whether necessary personnel might be available on that date and done in a manner otherwise violative of Florida law. *Id*.

26. On January 11, 2021, HMA indicated that it was canceling the previously rescheduled January 18, 2021 audit to "to further defer the audit to a future date." *Attached as Exhibit E.*

### HMA Sues Napleton's West Palm and Others

---

[1] Those issues were described as including, but not limited to: (i) forcing inventory on Plaintiff without express and proper authorization; (ii) arbitrary awards of advertising ("Co-op") subsidies to favored competing dealers; (iii) incentive changes tied to facility improvements and objectionable charge backs related to same; (iv) the unreasonable establishment of "Primary Marketing Areas" dictating incentives and vehicle allocations; and (iv) manipulation of wholesale programs during the progression of the COVID-19 pandemic.

27. On November 17, 2020, HMA filed a seven-count Complaint against Napleton's West Palm as well as North American Automotive Services, Inc., Mr. Gene Khaytin, Mr. Ernie Revuelta, Mr. Edward W. Napleton (incorrectly listed as "Edward Napleton Jr." in the filing) ("HMA's Lawsuit"). See, *Hyundai Motor America Corporation v. North America (sic.) Automotive Services, Inc., EFN West Palm Motor Sales, LLC, Gene Khaytin, Ernie Revuelta, Edward Napleton, Jr. (sic.), John Does and Richard Roes; Case No. 9:20-CV-82102 DMM*, in the District Court in and for Southern District of Florida.

28. On November 18, 2020, an article was published in the online version of Automotive News discussing HMA's Lawsuit.

29. Within an hour of that publication, Mr. Munoz and HMA called an "emergency" HDAC meeting but purposefully did not invite Brian Napleton, who at the time remained a duly elected member of the HDAC and was not a named defendant in the HMA Lawsuit.

30. At that HDAC meeting, which involved dealers on the HDAC and HMA personnel and executives, Mr. Munoz read a prepared statement regarding HMA's Lawsuit which was intended, and interpreted by attending dealers, as an explicit threat to all the NDAC dealers by singling NAG out as an example.

31. Mr. Munoz's actions as set forth herein are consistent with his reputation in the automotive industry for taking punitive action against dealers that do not bend to his agenda.

### Napleton's West Palm Receives the Notice of Termination

32. On November 20, 2020[2], HMA sent its Notice of Intention to Terminate Dealer Agreement (the "Notice of Termination") to Napleton's West Palm. *Attached as Exhibit F.*

33. Therein, HMA threatens to "terminate the Dealer Agreement and any and all other agreements between Napleton's West Palm and HMA effective at 12:01 a.m. EST on the 91st day after delivery of th[e] notice." *Id* at 1.

34. The Notice of Termination further states "Napleton's West Palm has substantially and materially breached section 16.B.1.c of the Dealer Agreement by submitting false claims, information and statements to HMA as described [in the Notice of Termination]." *Id* at 3.

35. HMA's does not specify which "claims", "information", and "statements" were false. Instead, the Notice of Termination makes general reference to "submission of false warranty claims", "intentionally [blowing] engines", "submi[ssion] of false documentation" and "submi[ssion] of false statements". In the context of an automotive dealership, "claims", "information", and "statements" are continuously exchanged between dealer and manufacturer on a day-to day basis. Without more precision in the Notice of Termination explaining its grounds, Napleton's West Palm is left guessing upon which repair transactions the Notice of Termination is based. Napleton's West Palm contends that this omission was intentional as it lacks any basis in fact.

36. The Notice of Termination fails to provide any detail as to which vehicles false warranty claims and other false information were provided. Upon information and

---

[2]Simultaneously, HMA also sent Notices of Default to Napleton's West Palm and North Palm Hyundai, LLC d/b/a Napleton's North Palm Hyundai asserting additional breaches of the Dealer Agreement.

belief, the specific information (should it exist) is available to HMA.  The fact that the Notice of Termination makes reference to "22 engines" being blown up by Napleton's West Palm belies any contention on HMA's part that it does not have VINs associated with these vehicles.  There can be no justifiable basis for HMA's notable lack of the inclusion of this vital information.[3]  The absence of such VINs further calls into question whether a substantial and material breach occurred, and whether HMA is acting in good faith and with good cause in seeking termination.  Likewise, the Notice of Termination alleges that Plaintiff submitted "false statements and claims" concerning "reimbursements, refunds, financial information, data, warranties, servicing, repairs and/or maintenance" but fails to identify any such false statements and/or claims supposedly submitted by Napleton's West Palm which HMA must have in its possession or to whom or by whom such statement were allegedly made.  There can be no "substantial and material" breach as required to effectuate a franchise termination without any specific information related to the vehicles which are at the heart of HMA's allegations of submission of false information.

37. Based on information and belief, HMA has not identified any vehicles where there were "false statements and claims" and for which HMA's opportunity to seek legal recourse has not lapsed.  This is fatal to the Notice of Termination.

38. All conditions precedent to bringing these claims have been fulfilled, waived and/or excused.

### **Applicable Florida Law**

---

[3] *See* Ex. F at 2 wherein HMA contends that "(I)n one month in 2019 alone, Napleton's West Palm intentionally blew 22 engines."

39. The Dealer Act limits penalties or adverse actions HMA and other automotive manufacturers/distributors can take regarding false or fraudulent claims. For instance, the time period subject to audit is limited to "the 12-month period immediately following the date the claim was paid" (the "Lookback Period"). *See* Fla. Stat. §320.64(25). "After such time periods have elapsed, **all warranty, maintenance**, and other service-related payments and incentive payments **shall be deemed final and incontrovertible for any reason notwithstanding otherwise applicable law**...." *Id* (emphasis added).

40. Section 320.641, Florida Statutes, requires a manufacturer to provide written notice to the dealer and the Department of Highway Safety and Motor Vechicles of its intent to terminate the franchise and set forth the *specific* grounds for the termination. Section 320.641 provides a right of action for a dealer that receives notice of such proposed termination. To wit, "[a]ny motor vehicle dealer who receives a notice of intent to discontinue, cancel, not renew, modify, or replace may, within the 90-day notice period, file a petition or complaint for a determination of whether such action is an unfair or prohibited discontinuation, cancellation, nonrenewal, modification, or replacement." *Id*. Furthermore, the termination is stayed immediately, by express statutory requirement and without need to seek an injunction, upon the filing of a Complaint (such as this filing) contesting the proposed termination. *See* §320.641(3), Fla. Stat. (2020). "Agreements … shall continue in effect until final determination of the issues raised in such petition or complaint by the motor vehicle dealer." *Id*. Likewise, section 320.641(7) reiterates that "the franchise agreement shall remain in effect until a final judgment is entered after all appeals are exhausted."

41. Section 320.641(3) specifically prohibits a termination if: (i) it "is not clearly permitted by the franchise agreement"; (ii) it "is not undertaken in good faith"; (iii) it "is not undertaken for good cause"; or (iv) "the grounds relied upon for termination … have not been applied in a uniform and consistent manner."

42. Section 320.6412, Florida Statutes, further limits the circumstances in which a manufacturer/distributor may terminate a franchise agreement based upon "misrepresentation or fraud, or the filing of any false or fraudulent statements or claims with the licensee". The burden is on HMA to prove: (i) "that either the majority owner, or if there is no majority owner, the person designated as the dealer-principal in the franchise agreement, knew of such acts at the time they allegedly were committed"; or (ii) "that the licensee provided written notice detailing such alleged acts to the majority owner or dealer-principal who, within a reasonable time after receipt of such written notice, failed to take actions reasonably calculated to prevent such acts from continuing or recurring." *Id.*

## COUNT I
## (Violation of F.S. §320.641 – Unlawful Termination and Mandatory Stay)

43. Plaintiff realleges and incorporates paragraphs 1-42 as if set forth fully herein.

44. The proposed termination is not clearly permitted by the franchise agreement in that HMA's Notice of Termination fails to identify any false claims submitted by Napleton's West Palm. This does not suffice to allow the extraordinary remedy of immediate termination and destruction of Plaintiff's business.

45. The factual allegations contained in the Notice of Termination are not accurate, have not been investigated properly by HMA, and fail to establish the good cause required to effectuate termination.

46. Based on information and belief, the proposed termination is not undertaken in good faith but is part of a concerted campaign by HMA to inflict reputational and economic harm on Napleton's West Palm and to intimidate the Hyundai dealer community from asserting its rights and remedies under the Dealer Act.

47. Based on information and belief, HMA has not uniformly and consistently sought to terminate the franchise of dealers who it believes falsely submitted warranty or recall claims.

48. HMA cannot meet its burden under Section 320.6412.

49. Here, the first "notice" that HMA provided to Napleton's West Palm was the HMA Lawsuit filed mere days before the Notice of Termination was served. Therefore, there is no basis upon which HMA could contend that the second prong of Section 320.6412 applies.

50. HMA speciously attempts to trigger the first-prong by alleging in its Notice of Termination that "[a]t least as early as 2017, Napleton's West Palm's managers and owners, including Edward [F.] Napleton [] and Edward [W.] Napleton [], knew that all or some of the [alleged] acts were occurring. Some of these acts continued after Napleton's West Palm's managers and owners learned of them, and they failed to take actions reasonably calculated to prevent such acts from continuing or recurring." Ex. F at 2-3.

51. There is no majority owner of Napleton's West Palm as no person or entity owns more than 50% of Napleton's West Palm.

52. Upon information and belief, HMA has a policy and practice of designating a dealership's majority owner as the dealer-principal.

53. Under the Dealer Agreement, as amended, Edward F. Napleton is treated as Napleton's West Palm's dealer principal. At no relevant time has Edward F. Napleton had any knowledge of the events alleged by the Notice of Termination.

54. Plaintiff received notice of HMA's intent to terminate its franchise through a letter dated November 20, 2020 (i.e., the Notice of Termination). The grounds set forth in HMA's letter allege breaches of the Dealer Agreement by Plaintiff's "submitting false claims, information and statements to HMA as described [in the Notice of Termination]." *See* Ex. F at 3.

55. The transactions relied upon by HMA in its Notice of Termination fall outside of the 12-month Lookback Period. HMA's Notice of Termination cannot be based upon claims which are now deemed final and incontrovertible by Florida law "for any reason" (e.g., a franchise termination). *See* Fla. Stat. §320.64(25).

56. Plaintiff files this Complaint, as expressly permitted by section 320.641, and seeks a determination that the termination is unfair, is not clearly permitted by the franchise agreement, is not undertaken in good faith, is not undertaken for good cause, that HMA has not applied the grounds for termination in a uniform and consistent manner and the alleged breach of the Dealer Agreement is not material and substantial.

57. HMA has failed, and will fail, to meet its burden pursuant to sections 320.641(3) and 320.6412, to establish that the proposed termination is lawful.

58. WHEREFORE, pursuant to section 320.641(3), (7), Plaintiff requests that this Court enter an immediate stay of the termination, a judgment against HMA finding that the proposed termination is not permitted under section 320.641, a judgment prohibiting

HMA from terminating the franchise, and awarding attorneys' fees and costs to Plaintiff, along with such other relief as this Court deems just and equitable.

## COUNT II
### Violation of F.S. §320.64(7) (Unlawful Termination)

59. Plaintiff realleges and incorporates paragraphs 1-58 as set forth fully herein.

60. Section 320.64(7), Florida Statutes, makes it unlawful for a manufacturer to have "threatened to discontinue, cancel, or not to renew a franchise agreement of a licensed motor vehicle dealer, where the threatened discontinuation, cancellation, or nonrenewal, if implemented, would be in violation of any of the provisions of s. 320.641."

61. Section 320.697, Florida Statutes, provides a right of action for any person "who has suffered pecuniary loss or who has been otherwise adversely affected because of a violation by a licensee of ss. 320.60-320.70, notwithstanding the existence of any other remedies under ss. 320.60-320.70."  Additionally, section 320.697 provides that "[u]pon a prima facie showing by the person bringing the action that such a violation by the licensee has occurred, the burden of proof shall then be upon the licensee to prove that such violation or unfair practice did not occur."

62. HMA issued written notice of HMA's intent to terminate Plaintiff's Hyundai dealership through a letter dated November 20, 2020.  HMA's notice is a threat to cancel Plaintiff's franchise.  HMA's notice of termination has, and continues to, adversely affect Plaintiff.  HMA's threatened termination is in violation of 320.641 for the reasons set forth in detail in this Complaint, and in particular Count I above.  HMA possesses the burden of proof to establish that the termination is permissible.

63. Plaintiff is damaged by the mere threat of the termination

64. Should HMA effectuate the proposed termination, the Plaintiff will suffer catastrophic loss of its franchise value.

65. WHEREFORE, pursuant to section 320.697, Plaintiff demands entry of a judgment against HMA finding that HMA's threatened termination violates section 320.64(7), and an award of compensatory damages, treble damages, attorneys' fees and costs and other relief this Court deems just and equitable.

## COUNT III
### Violation of F.S. §320.64(7) (Injunctive Relief)

66. Plaintiff realleges and incorporates paragraphs 1-65 as set forth fully herein.

67. Section 320.695, Florida Statutes, provides that "[i]n addition to the remedies provided in this chapter, and notwithstanding the existence of any adequate remedy at law" a dealer may apply for "a temporary or permanent injunction, or both, restraining any person … from violating or continuing to violate any of the provisions of ss. 320.60-320.70." "Such injunction shall be issued without bond. A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction." Plaintiff is authorized to seek an injunction, and obtain such an injunction (without bond) based upon a single act in violation of sections 320.60-320.70.

68. Pursuant to section 320.695, Plaintiff brings this action in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Plaintiff.

69. HMA has alleged that Plaintiff is in material breach of its franchise and is actively attempting to terminate Plaintiff's franchise. Sections 320.641 and 320.64(7) prohibit HMA from terminating, or threatening to terminate, Plaintiff's franchise unless it meets the statutory requirements to do so. Plaintiff, in Counts I-II, has set forth that HMA's

threatened termination violates sections 320.641 and 320.64(7), and establishes that HMA does not have the statutory authority to terminate Plaintiff's franchise. Counts I and II adequately allege a statutory violation based upon the threatened termination, which "shall be sufficient to authorize the issuance of an injunction" that halts HMA from terminating Plaintiff's Dealer Agreement. §320.695, Fla. Stat.

70.     Further reinforcing the need for and appropriateness of the injunction is the express requirement that a franchise remain in full force and effect after the filing of a Complaint challenging the proposed termination unless and until a final determination has been made that the proposed termination is permitted by law. § 320.641(3) & (7), Fla.Stat. (2020). Therefore, an injunction restraining HMA from terminating Plaintiff's Dealer Agreement is appropriate.

71.     WHEREFORE, Plaintiff, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Plaintiff hereby demands entry of an injunction restraining HMA from terminating Plaintiff's franchise unless and until a final determination (including related appeals) has been made that HMA is permitted to do so pursuant to Florida law.

**Plaintiff demands a trial by jury as to all actions and claims so triable.**

Dated: February 17, 2021.

Respectfully Submitted,

**BASS SOX MERCER**

s/ Nicholas A. Bader
Richard N. Sox (FBN 982156 )
rsox@dealerlawyer.com
Nicholas A. Bader (FBN 55351)
nbader@dealerlawyer.com
2822 Remington Green Circle
Tallahassee, Florida 32308
T: 850.878.6404

*Attorneys for Plaintiff.*