**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 21-80348-CIV-CANNON/Matthewman**

**EFN WEST PALM MOTOR SALES, LLC,**
d/b/a Napleton's West Palm Beach Hyundai,
and the **FLORIDA DEPARTMENT OF**
**HIGHWAY SAFETY AND MOTOR VEHICLES**,

       Plaintiffs,

v.

**HYUNDAI MOTOR AMERICA CORPORATION**,

       Defendant.

_____/

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT [ECF No. 247]**

      **THIS CAUSE** comes before the Court upon Defendant's Motion for Summary Judgment

in the Reputational Harm Termination Case (the "Motion") [ECF No. 247], filed on September

26, 2022.[1]  The Court has reviewed the Motion, Plaintiffs' Response in Opposition [ECF No. 260],

Defendant's Reply [ECF No. 275], the parties' statements of facts [ECF Nos. 245, 246, 257, 274;

*see also* ECF No. 269], and the full record.  The Court also held a hearing on the Motion on

November 17, 2022 [ECF No. 289].  For the reasons set forth herein, Defendant's Motion for

Summary Judgment [ECF No. 247] is **GRANTED**.

---

[1] Plaintiffs also filed a Motion for Summary Judgment seeking judgment as a matter of law in both
the Fraud Termination Case and the Reputational Harm Termination Case [ECF No. 242].  This
Order addresses only the Reputational Harm Termination Case.

CASE NO. 21-80348-CIV-CANNON/Matthewman

## FACTUAL BACKGROUND[2]

This consolidated case is comprised of two statutory termination cases—the "Fraud Termination Case" and the "Reputational Harm Case"—only the latter of which is addressed in this Order [S.D. Fla. 21-80348-CIV-CANNON (consolidated); S.D. Fla. 21-81050-CIV-CANNON].

Plaintiffs are two authorized Hyundai dealerships, referred to collectively as the "Napleton Dealerships" or "the dealerships": EFN West Palm Motor Sales, doing business as Napleton's West Palm Beach Hyundai ("Napleton's WP"), and North Palm Hyundai, referred to as "Napleton's NP" [ECF No. 245 ¶¶ 1–2]. Plaintiffs claim that Defendant, Hyundai North America ("HMA"), wrongfully terminated the parties' Dealer Agreements [ECF No. 1-3] based on Letters of Termination Sent to the individual dealerships in March 2021 [ECF No. 245-15; ECF No. 245-16]. Those letters followed criminal sexual misconduct allegations against Edward W. Napleton, an individual who supports operations of Hyundai dealerships [ECF No. 246 ¶ 15; ECF No. 257 ¶ 15], and the resulting negative publicity stemming from those allegations [ECF No. 1 ¶¶ 31–35, Case No. 21-cv-81050].[3] HMA determined that such negative publicity impaired its reputation and ultimately decided to terminate the parties' Agreements under Section 16.B.2.h of the Dealer Agreements, which permits HMA to terminate the Dealer Agreement if HMA learns of "any conduct which in HMA's opinion impairs the reputation of [the dealerships] or HMA" [ECF No. 245-3 pp. 19–20].[4]

---

[2] The following facts are undisputed and derive from the parties' Joint Statement of Facts [ECF No. 245].

[3] All citations to the Reputational Harm Case docket, before the case was consolidated with the Fraud Termination Case, are followed by Case No. 21-cv-81050.

[4] The other consolidated case, not at issue in this Order, is referred to as the "Fraud Termination Case" and concerns a notice of termination issued by HMA after Plaintiffs allegedly "breached

Plaintiffs "sell and service Hyundai products pursuant to [the] Dealer Sales and Service Agreements" ("Dealer Agreements") [ECF No. 245 ¶ 5].  On January 29, 2009, Napleton WP entered into a Dealer Agreement with HMA [ECF No. 245 ¶ 6].  On September 15, 2008, Napleton NP entered into a Dealer Agreement with HMA [ECF No. 245 ¶ 7].  HMA uses the same Dealer Agreement with each dealer; HMA has Standard Provisions that are incorporated into every HMA franchise agreement; and dealers do not negotiate specific terms of the Dealer Agreement with HMA [ECF No. 245 ¶¶ 6–10].

The Napleton Dealerships "are part of a group of motor vehicle dealerships owned or controlled by" North American Automotive Services ("NAG") that provides "certain centralized services" to the dealerships [ECF No. 245 p. 12–13].  NAG is run by Edward F. Napleton; he and his family have "owned and operated dealerships since 1931" [ECF No. 245 ¶ 13].  In addition to owning NAG, Edward F. Napleton also is the "Dealer-Principal" of the Napleton Dealerships and "the Chairman and majority owner of Plaintiffs [Napleton Dealerships]" [ECF No. 245 ¶ 19].  Edward F. Napleton's son, named Edward W. Napleton, was employed as the director of NAG [ECF No. 245 ¶ 17].  NAG is not a party to the Dealer Agreements between HMA and Plaintiffs, however, and neither is Edward F. Napleton or his son, Edward W. Napleton [ECF No. 245 ¶¶ 11, 14].

---

Section 16.B.1.c of the Dealer Agreement by submitting false claims, information, and statements to HMA" regarding "reimbursements, refunds, financial information, data, warranties, servicing, repairs and/or maintenance" [ECF No. 8 ¶¶ 43–70; *see* ECF Nos. 33, 40].

### A.  Provisions of the Dealer Agreements

The Standard Provisions, incorporated in the Dealer Agreements for the Napleton Dealerships, contain a termination provision in Section 16 B. 2., entitled "Termination Upon Sixty Days['] Notice" [ECF No. 245 ¶ 15].  That provision states, in pertinent part:

> If HMA learns that any of the following events have occurred and determines, in its sole discretion, that the matter may require termination of this Agreement, HMA will so advise Dealer in writing.  If Dealer does not correct the condition or explain the matter to HMA's satisfaction within thirty (30) days of such notice, then HMA will have the right to terminate this Agreement upon sixty (60) days['] notice. Events which may result in such termination include: . . .  h. Any conduct which in HMA's opinion impairs the reputation of Dealer or HMA.

[ECF No. 245 ¶ 15; ECF No. 245-3 p. 18].

In addition to the parties' Dealer Agreements, the parties' relationships are regulated by the Florida Dealer Act, codified at Fla. Stat. §§ 320.60-70 [ECF No. 245 ¶ 16].  The provision of the Act at issue here, Fla. Stat.  § 320.641(b)(3), states as follows:

> A discontinuation, cancellation, or nonrenewal of a franchise agreement is unfair if it is not clearly permitted by the franchise agreement; is not undertaken in good faith; is not undertaken for good cause; or is based on an alleged breach of the franchise agreement which is not in fact a material and substantial breach; or, if the grounds relied upon for termination, cancellation, or nonrenewal have not been applied in a uniform and consistent manner by the licensee.

Fla. Stat. § 320.641(b)(3).

### B.  Sexual Misconduct

On August 8, 2018, Edward W. Napleton (the son) and other NAG employees and officers "attended a general managers meeting at the Marriot Hotel in West Palm Beach, Florida" [ECF No. 245 ¶ 20].  In February 2019, Edward W. Napleton "was arrested and charged with a violation of Fla. Stat. 794.011(4)(b) with a charge description of 'Sexual Battery on a Helpless Person'" [ECF No. 245 ¶ 21].  The incident underlying these charges occurred on August 8, 2018, following the company's meeting [ECF No. 245 ¶ 24].  As alleged in the charging Information:

> EDWARD W NAPLETON on or about August 8, 2018 in the County of Palm Beach and the State of Florida, Edward W Napleton, a person 18 years or older, did unlawfully commit sexual battery by penetrating or having union with [Jane Doe's] vagina with his penis, upon [Jane Doe]., a person 18 years of age or, without [Jane Doe's] consent and while [Jane Doe] was physically helpless to resist, contrary to Florida Statute 794.011(4)(b) and (e)1.(1DEG FEL).

[ECF No. 245 ¶ 23]. This incident "was the subject of media coverage" [ECF No. 245 ¶ 24]. Further, in June 2019, Jane Doe filed a state lawsuit against Edward W. Napleton, which led to a televised press conference during which Jane Doe's attorney detailed the sexual misconduct allegations against Edward W. Napleton [ECF No. 245 ¶¶ 25–26].

"On October 20, 2021, Edward W. Napleton plead 'guilty in his best interest' to Felony Battery and stipulated to the assessment of one (1) sex penetration count on the criminal score sheet in exchange for not registering as a sex offender, adjudication being withheld, receiving no incarceration, and being sentenced to community service and probation that could be early terminated, during which time he could travel to multiple states for business purposes" [ECF No. 245 ¶ 33].

Consistent with the Motion [ECF No. 247], Edward W. Napleton's actions against Jane Doe as described above and the criminal charge are referred to in this Order as the "Sex Crime."

## C. Process of Termination of Dealer Agreements

On November 20, 2020, HMA issued Notices of Default to Edward F. Napleton, as to both Napleton Dealerships, for impairment of reputational harm [ECF No. 245 ¶ 28; ECF Nos. 245-10, 245-11]. The Notices of Default stated: "As provided in section 16.B.2 of the Dealer Agreement, [the Napleton Dealerships] shall have a period of 30 days from the date of this letter to propose and implement a way to correct this condition to HMA's satisfaction or explain the matter to HMA's satisfaction" [ECF No. 245 ¶ 28 (citing ECF Nos. 245-10, 245-11)]. Plaintiffs responded to the Notices on December 15, 2022, generally characterizing HMA's accusations as inaccurate

and expressing a lack of understanding/notice as to what actions the dealerships needed to take to remedy HMA's concerns [ECF No. 245-12; *see* ECF No. 245 ¶ 29; ECF No. 245-12].  HMA sent a second letter to Plaintiffs on January 11, 2021, in response to Plaintiffs' December 15 response letter, reemphasizing HMA's concern of damage to its reputation and expressing dissatisfaction with a press release issued by the dealerships in which the dealerships voiced support for Edward W. Napleton [ECF No. 245 ¶ 30; ECF No. 245-13].  Plaintiffs then responded in a letter dated February 10, 2021, again stating that HMA's response left the dealerships "no closer to understanding what would satisfy HMA" in remedying its concerns [ECF No. 245 ¶ 31; ECF No. 245-14].  On March 16, 2021, HMA sent the Napleton Dealerships the subject Notices of Termination [ECF No. 245 ¶ 32; ECF Nos. 245-15, 245-16].  The Notices are nearly identical; one was sent to WP Napleton, and the other was sent to NP Napleton [ECF No. 245-15 (WP Napleton); ECF No. 245-16 (NP Napleton)].

In the Notices of Termination, HMA referenced the criminal charges against Edward W. Napleton for sexual battery on a helpless person and the pending civil lawsuit brought by Jane Doe [ECF No. 245-15 p. 3; ECF No. 245-16 p. 3].  The Notices of Termination also referenced a state whistleblower lawsuit brought in April 2020 by a former manager of a Napleton dealership, Mark Eddleman, alleging that Edward W. Napleton "confessed to Mr. Eddleman that he raped the same female victim who was the victim alleged in the criminal complaint and who filed the June 2019 civil complaint," and that Mr. Eddleman was pressured to lie to criminal investigators about the events [ECF No. 245-15 p. 4; ECF No. 245-16 p. 4].  Finally, the Notices of Termination

referenced NAG's public "support for and defense of Edward W. Napleton after the criminal charges became public" [ECF No. 245-15 p. 4; ECF No. 245-16 p. 4].[5]

## PROCEDURAL HISTORY

In June 2021, based on the above facts, Plaintiffs filed the operative Complaint against Defendant, asserting the following claims of unlawful termination as to both dealerships:

- <u>Count 1</u> – Unlawful Termination as to Napleton's West Palm in violation of Fla. Stat. § 320.641;

- <u>Count 2</u> – Unlawful Termination as to Napleton's North Palm in violation of Fla. Stat. § 320.641;

- <u>Count 3</u> – Unlawful Termination as to Napleton's West Palm in violation of Fla. Stat. § 320.64(7);

- <u>Count 4</u> – Unlawful Termination as to Napleton's North Palm in violation of Fla. Stat. § 320.64(7); and

- <u>Count 5</u> – Injunctive Relief as for Napleton's West Palm for violation of Fla. Stat. § 320.64(7); and

- <u>Count 6</u> – Injunctive Relief as for Napleton's North Palm for violation of Fla. Stat. § 320.64(7).

[ECF No. 1 ¶¶ 69–113, Case No. 21-cv-81050].

Following discovery, Defendant moved for summary judgment on all claims in the Complaint [ECF No. 247 pp. 2–4, 21].  The Motion is ripe for adjudication [ECF Nos. 260, 275, 286; *see* ECF Nos. 245–257, 274].

---

[5] In addition to the allegations of sexual misconduct and related events, the Notice sent to WP Napleton also referenced harm to Defendant's reputation stemming from an alleged scheme to defraud by the WP Napleton dealership [ECF No. 245-15 p. 3 ("[The sexual misconduct charges] and other charges, including the intentionally blown engines, in the documents and in news reporting, have been publicized in local and national news media, impairing the reputation of HMA and Napleton's West Palm.")].  Those allegations of fraud were the subject of a separate Notice of Termination sent to WP Napleton, triggering the Fraud Termination Case not at issue in this Order [ECF No. 8-6].

CASE NO. 21-80348-CIV-CANNON/Matthewman

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"When considering a motion for summary judgment . . . 'courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party[,] and when conflicts arise between the facts evidenced by the parties, [they must] credit the nonmoving party's version.'" *Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (quoting *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006)).  "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (internal quotation marks omitted).  The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts.  *Matsushita*, 475 U.S. at 586. Speculation, conjecture, or conclusory statements from a party cannot create a genuine issue of material fact.  *See Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).  The nonmoving party either must point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997).  But "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

CASE NO. 21-80348-CIV-CANNON/Matthewman

## DISCUSSION

In broad terms, Defendant argues that it reasonably used its discretion to terminate the Dealer Agreements under the plain terms of the reputational harm provision in Section 16.B.2.h, and that it acted uniformly and in accordance with the Florida Dealer Act in doing so, *see* Fla. Stat. § 320.641(3) [ECF No. 247 pp. 8–11, 19–22].   Plaintiffs respond that Defendant was not authorized to terminate Plaintiffs for the actions of an affiliated corporation (NAG) or its employee, Edward W. Napleton—neither of whom are parties to the Dealer Agreements or officers, employees, or agents of the franchise party (here, the Dealerships).  Plaintiffs also contend that Defendant has not met its burden to show that it satisfied the termination requirements under the Florida Dealer Act, specifically, Fla. Stat. § 320.641(3) [ECF No. 260 pp. 8–21].

Following consideration of the undisputed summary judgment record and the parties' arguments, the Court determines that summary judgment is warranted in favor of Defendant; Defendant reasonably exercised its discretion in accordance with the terms of Section 16.B.2.h of the Dealer Agreements, and there is no genuine dispute of fact that Defendant failed to comport with Fla. Stat. § 320.641(3).

**A. Defendant exercised its discretion reasonably in terminating Plaintiffs pursuant to Section 16.B.2.h of the Dealer Agreements.**

**1.  Legal Principles Governing the Parties' Dealer Agreements**

Under Section 16.B.2.h of the Dealer Agreements, if Defendant learns of any conduct "which in HMA's opinion impairs the reputation of Dealer of HMA," then HMA may use "its sole discretion" to determine that the relevant conduct requires termination of the Dealer Agreement [ECF No. 245-3 pp. 19–20]. If HMA makes such a determination, then, in accordance with Section 16.B.2, "HMA will so advise Dealer in writing.  If Dealer does not correct the condition or explain

the matter to HMA's satisfaction within thirty (30) days of such notice, then HMA will have the right to terminate this Agreement upon sixty (60) days' notice" [ECF No. 245-3 pp. 18–20].

Defendant's "sole discretion" to terminate the Dealer Agreements is informed, and cabined, by the background common law principle that, "where one party has 'sole discretion' under a contract, that party, in exercising its discretion, must act in good-faith and in accordance with the contracting parties' expectations." *Ernie Haire Ford Inc. v. Ford Motor Co*., 260 F.3d 1285, 1291 (11th Cir. 2001) (citing *Sepe v. City of Safety Harbor*, 761, So. 2d 1182, 1185 (Fla. 2d Dist. Ct. App. 2000); *see also Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097–98 (Fla. 1st Dist. Ct. App. 2000) ("[W]here the terms of the contract afford a party substantial discretion . . . the duty to act in good faith . . . limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party."). This good-faith limitation on a party's exercise of its sole discretion "is not great," however. *Ernie Haire Ford Inc.*, 260 F.3d at 1291. "'Unless no reasonable party . . . would have made the same discretionary decision . . . it seems unlikely that [the party's] decision would violate the covenant of good faith.'" *Id.* (quoting *Sepe*, 761 So. 2d at 1185).

Finally, Defendant's decision to terminate Plaintiffs is subject to Fla. Stat. § 320.641(3) of the Florida Dealer Act, which, as relevant here, defines a cancellation of a franchise agreement as "unfair"

> if it is not clearly permitted by the franchise agreement; is not undertaken in good faith; is not undertaken for good cause; or is based on an alleged breach of the franchise agreement which is not in fact a material and substantial breach; or, if the grounds relied upon for termination, cancellation, or nonrenewal have not been applied in a uniform and consistent manner by the licensee.

Fla. Stat. Ann. § 320.641(3). The licensee (here, Defendant) has the burden under the statute to prove that the termination action is fair and not prohibited. *Id.*

### 2.  Parties' Arguments

Against this legal backdrop, Defendant argues that it properly terminated the Dealership Agreements because it determined, in its "sole discretion" as permitted by Section 16.B.2.h, that the reputation of HMA and the Napleton dealerships had been harmed by Edward W. Napleton's actions, the criminal charge brought against him, and the dealerships' lack of investigative and disciplinary action following the sexual battery incident.  Thus, Defendant contends, applying the terms of the Dealer Agreements, it "need only demonstrate that: a) in HMA's opinion, the Sex Crime[] impaired the reputation of EFN and/or Hyundai; b) the Sex Crime[] may require termination, and c) EFN failed to correct or explain the Sex Crime[] to its satisfaction"; and also, consistent with Florida law, "that another reasonable party might have arrived at the same conclusion"—all such things Defendant says it has demonstrated, without any genuine factual dispute to the contrary [ECF No. 247 p. 11; *see* ECF No. 247 pp. 9–11; ECF No. 275 p. 2].   For the same reasons, Defendant maintains that it complied with Fla. Stat. § 320.641(3), because its termination was clearly permitted by the Dealer Agreements and undertaken in good faith.

In response, Plaintiffs rely on a reading of Fla. Stat. § 320.641(3), under which Defendant was required not only to show that it reasonably exercised its sole discretion pursuant to Section 16.B.2.h of the Dealer Agreements, but also that its termination was based on a "material and substantial breach" by Plaintiffs [ECF No. 260 p. 4].  Plaintiffs also take the position that it was not reasonable for Defendant to terminate the Dealer Agreements for actions that harmed Defendant's reputation but that were taken by an individual (Edward W. Napleton) who was not a party to the Dealer Agreements [ECF No. 260 p. 10 ("HMA is proposing to terminate two franchises, not for the misconduct of another franchise, but for the alleged misconduct of an

employee of an affiliated company that does not have a contract with HMA.  This violates basic principles of corporate liability, contract law and the Dealer Act.")].

### 3.  Defendant was not required to show a material and substantial breach prior to termination.

Before turning to the merits of Defendant's termination decisions, the Court first addresses Plaintiffs' threshold contention that Fla. Stat. § 320.641(3) requires Defendant, as a prerequisite to termination, to demonstrate a "material and substantial breach" of the parties' Dealer Agreement [ECF No. 260 pp. 18–19; *see* ECF No. 289 pp. 41–42].  Under the text of Fla. Stat. § 320.641(3) as applied in this case, the answer is no.  Defendant did not terminate Plaintiffs for breach of the Dealer Agreements.  Defendant terminated Plaintiffs pursuant to a discretionary reputational harm provision in the Dealer Agreements [*see* ECF No. 275 p. 2 ("Section 320.641(3), Florida Statutes separately contemplates terminations that are "clearly permitted" by the agreement, irrespective of a breach, as well as terminations that are based on alleged breaches of the franchise agreement.")].

Section 320.641(3) provides as follows:

> A discontinuation, cancellation, or nonrenewal of a franchise agreement is unfair if it is not *clearly permitted by the franchise agreement*; is not undertaken in good faith; is not undertaken for good cause; *or is based on an alleged breach of the franchise agreement which is not in fact a material and substantial breach*; or, if the grounds relied upon for termination, cancellation, or nonrenewal have not been applied in a uniform and consistent manner by the licensee.

Fla. Stat. § 320.641(3) (emphases added).

As read, this statute defines instances, in the alternative form, in which the termination of a franchise agreement will be deemed unfair—one such instance being where a licensee cites a breach of a franchise agreement as the basis for termination when in fact the purported breach is not "material and substantial."  Fla. Stat. § 320.641.  Thus, if a licensee terminates a franchise agreement "based on an alleged breach," that breach must be a "material and substantial breach."

*Id.*  But that conditional requirement does not lead to the static and almost converse conclusion espoused by Plaintiffs—i.e., that a licensee cannot terminate a dealer agreement *unless*, *and in all cases*, it can first establish that the franchisee materially and substantially breached the agreement [*see* ECF No. 275 pp. 2–3].  Plaintiffs offer no supporting authority for their reading of Fla. Stat. § 320.641, nor does such a reading comport with the ordinary meaning of the statutory text.

Therefore, as applied here, Fla. Stat. § 320.41(3) did not require Defendant to show that Plaintiffs materially or substantially breached the Dealer Agreements—again because Defendants terminated Plaintiffs based on a reputational-harm triggering provision in the Dealer Agreements, not a legal breach of the Dealer Agreements.[6]

### 4.   Defendant acted in accordance with the Dealer Agreements.

The express language of the Dealer Agreements granted Defendant the authority to terminate the Dealer Agreements utilizing its sole discretion and based on any conduct that harmed the reputation of HMA or the dealerships.

***First***, under the Dealer Agreements, HMA has broad discretion to terminate the dealerships for harm to HMA's reputation of the dealerships' reputation.  Section 16.B.2.h states that "[i]f HMA learns that any of the following events have occurred and determines, *in its sole discretion*, that the matter may require termination . . . *then HMA will have the right to terminate* this

---

[6] Alternatively, and in response to Plaintiffs' contention that a showing of breach is required, Defendant argues that Edward W. Napleton's sexual misconduct would qualify as a material breach in any event [ECF No. 289 pp. 30, 53; *see* ECF No. 259 pp. 12–13].  The Court need not address that defensive alternative argument, because the proper reading of Fla. Stat. § 320.641(3) as applied here does not require a showing of a "material and substantial" breach, for the reasons previously stated.  The Court also notes that, although Defendant used the word "breach" in relevant documentation concerning the reputational harm [ECF No. 245-15 p. 5; ECF No. 245-16 p. 5], such references explicitly refer to the sole discretion triggering provision in Section 16.B.2.h, which, as the parties recognize, is an event-triggering provision, not a legal breach provision [*see* ECF No. 289 pp. 52–55].

Agreement upon sixty (60) days['] notice" [ECF No. 245-3 p. 19 (emphasis added)]. One of the events enumerated in the Agreements that may warrant termination is "[a]ny conduct *which in HMA's opinion* impairs the reputation of the DEALER or HMA" [ECF No. 245-3 p. 20 (emphasis added)]. Therefore, it is a matter of HMA's discretion as to whether there is reputational harm and whether that harm warrants termination. Defendant determined that such harm existed and issued the Notices of Termination accordingly [*see* ECF No. 245-15; ECF No. 245-16 (Notices of Termination)].

**Second**, the undisputed summary judgment record yields no genuine dispute that Defendant reasonably exercised its discretion to terminate the Dealer Agreements [ECF No. 247 pp. 11–15]. Defendant's corporate representative testified that: (1) HMA learned of the Sex Crime through the press in February 2019; (2) HMA undertook months of investigation and gathering information; and (3) after review, HMA reached an opinion that the Sex Crime impaired the reputation of HMA and determined that the conduct authorized termination [ECF No. 247 p. 11]. In making this determination, Defendant considered various factors, including the nature of the Sex Crime [ECF No. 247 pp. 11–12]; the "very negative press" that "occurred in the wake of the 'Me Too' movement, a time of heightened public scrutiny of and sensitivity to sexual misconduct in the workplace [ECF No. 247 pp. 12–13]; the fact that "Edward Napleton, Jr. shares a name with the Plaintiffs' dealerships" and the "significant risk that consumers would fail to differentiate between Edward Napleton, Jr., the criminal, versus the [Napleton dealerships] and the Hyundai brand, itself" [ECF No. 247 p. 13]; Plaintiffs' lack of response to mitigate the damage [ECF No. 247 p. 13]; NAG's press release "expressing its continued 'full[] support' for Mr. Napleton, Jr., notwithstanding the criminal charges against him" [ECF No. 247 p. 13]; and Plaintiffs lack of "meaningful investigation into the Sex Crime" and lack of cooperation in

communicating with Defendant's request for more information into the incident [ECF No. 247 p. 14].  Defendant also considered the fact that Plaintiffs, following the January 11, 2021, letter, "doubled down" in their support of Edward W. Napleton rather than meaningfully investigate the Sex Crime or impose any consequences on him [ECF No. 247 p. 14].

Simply put, on this record, there is no genuine dispute that HMA exercised its discretion reasonably in determining that the Sex Crime and Plaintiffs' response thereto harmed the reputation of HMA and the dealerships.  Or, framing the issue in the language of Federal Rule of Civil Procedure 56 layered onto Florida contract law, no reasonable juror would find that "no reasonable party in the position of [Defendant] would have made the same discretionary decision [Defendant] made."  *Sepe*, 761 So. 2d at 1185 ("Unless no reasonable party in the position of the City would have made the same discretionary decision the City made, it seems unlikely that its decision would violate the covenant of good faith in this context."); *see also Ernie Haire Ford*, 260 F.3d at 1312–13 ("Under the Dealership Agreement, it is [manufacturer]'s own judgment that controls, not [dealer]'s judgment, not a jury's judgment and not a reasonable business person's judgment."); *Sportfolio Publications, Inc. v. AT & T Corp.*, 320 F.3d 75, 80-81 (1st Cir. 2003) (affirming that AT & T properly exercised "its sole discretion" in terminating a contract with Sportfolio Publications based on AT & T's conclusion that "its services, public image or goodwill were adversely affected," by suspicious calls).

**Third**, contrary to Plaintiffs' contention that HMA was not authorized to terminate the Dealer Agreements based on the actions of a non-party to the Agreements (here, Edward W. Napleton) [ECF No. 260 pp. 9–11], Section 16.B.2.h of the Dealer Agreements does not limit action that could impair the reputation of the parties to only the conduct of the parties to the agreement.  The Dealer Agreements state that Defendant can terminate the Agreement for "*[a]ny*

*conduct* which in HMA's opinion impairs the reputation of Dealer or HMA" [ECF No. 245-3 p. 20 (emphasis added)]. There is no limiting language in that broad provision—unlike, for example, other termination provisions in the Dealer Agreements that are "expressly conditioned on conduct by the 'DEALER' or specified individuals affiliated with the Dealer" [*see* ECF No. 275 p. 3; ECF No. 245-3 p. 19 (demonstrating that Section 16.B.1.b provides for immediate termination if "DEALER, or any Owner, officer or General Manager of DEALER, is convicted of any felony or for any violation of law which in HMA's sole opinion tends to adversely affect the operation, management, reputation, business or interests of DEALER or HMA or to impair the good will associated with the Hyundai Marks")]. *Price v. Time, Inc.*, 416 F.3d 1327, 1336 (11th Cir. 2005), *as modified on denial of reh'g*, 425 F.3d 1292 (11th Cir. 2005) (referring to word "any" as a "powerful and broad word") (citing cases). Additionally, the Court agrees with Defendant that the language "any conduct" as contained in the Dealer Agreement—while certainly broad—is not ambiguous but rather reflects that the parties "did not intend to limit such terminable conduct to any particular group of individuals." [ECF No. 275 p. 4 (citing *John Floyd Assoc. v. First Fla. Credit Union*, 443 F. App'x 396, 399 (11th Cir. 2011)) ("An interpretation is not reasonable if it requires rewriting the contract to add language that a party omitted and in order to impose an obligation on the other party that was not in the original bargain.")]. Although Plaintiffs understandably wish the language were narrower, words must be given their plain meaning, *see CBS, Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225 n.6 (11th Cir. 2001), and the phrase "any conduct which . . . impairs the reputation of DEALER or HMA" is not ambiguous merely because it is broad.[7]

---

[7] Nor is Defendant's reliance on the conduct of Edward W. Napleton, a non-party to the Dealer Agreement, evidence of bad faith or unreasonable discretion on the part of Defendant. As noted, Section 16B.2.h refers to "any conduct" deemed by HMA to be harmful to its reputation, without

For these reasons, Defendant has shown no genuine dispute that it reasonably exercised its sole discretion to terminate the Dealer Agreements in accordance with the language of those agreements.[8]  That judgment is entitled to deference so long as it does not violate Fla. Stat. § 320.641(3)—which the Court now turns to discuss.

### B. Plaintiffs have not demonstrated a triable issue of fact that Defendant acted in bad faith or in an inconsistent manner in terminating the Dealer Agreements.

Pursuant to Fla. Stat. § 320.641(3), a decision to terminate a franchise agreement is unfair if the determination "is not undertaken in good faith" or "if the grounds relied upon for termination . . . have not been applied in a uniform and consistent manner by the licensee."  Fla. Stat. § 320.641(3).  This good faith requirement is rooted in the same good faith and fair dealing requirements implicit in Florida contract law.  *See Ernie Haire Ford, Inc.*, 260 F.3d at 1291 (stating that "the implied covenant of good faith and fair dealing is a part of every contract under Florida law" and attaches to "the performance of a specific contractual obligation"); *Ard Dr. Pepper*

---

limitation to agents or parties to the contract.  Second, there is no dispute that Defendant based its termination not only on the underlying sexual misconduct of Edward W. Napleton (and the subsequent lawsuits) but also on Defendant's assessment of Plaintiffs' deficient response to that sexual misconduct [ECF No. 245-15 pp. 2–3 (referring also to Plaintiffs' support of Edward W. Napleton post-charges and lack of investigation and/or disciplinary action); ECF No. 245-16 pp. 2–4 (same)].  Third, and more factually, regardless of Edward W. Napleton's disputed status as an agent of Plaintiffs (an issue the Court need not decide), there is no dispute that Edward W. Napleton was the director of NAG, which owns and/or controls the dealerships and provides centralized services to the dealerships [ECF No. 245 ¶¶ 12–13, 17].  Plaintiffs do not meaningfully dispute that Edward W. Napleton's oversaw dealership operations at least to some extent [ECF No. 246 ¶ 15; ECF No. 257 ¶ 15; *see* ECF No. 289 pp. 56–57].  Plaintiffs identify no record evidence to indicate that Defendant's decision to terminate Plaintiffs based on the conduct of a non-party to the Dealer Agreements (in this case, Edward W. Napleton) was undertaken in bad faith or otherwise constitutes an unreasonable exercise of sole discretion.

[8] The Court takes no position on the disputed question whether HMA and/or the dealerships actually suffered reputational harm [*see* ECF No. 260 pp. 6–8]; the relevant question under the Dealer Agreements and the applicable law is whether HMA believed, in the reasonable exercise of its discretion, that Edward W. Napleton's conduct impaired the reputation of HMA or the dealerships.

*Bottling Co. v. Dr. Pepper Co.*, 202 F.2d 372, 376–77 (5th Cir. 1953) (finding that a contract provision where performance by one party was conditioned on the satisfaction of another party meant that conditioning party could cancel and terminate the agreement if its dissatisfaction was genuine and it acted in good faith); *see also W. Palm Beach Acquisitions, Inc. v. Kia Motors Am., Inc.*, No. 20-CV-80780, 2022 WL 1211404, at *4 (S.D. Fla. Apr. 25, 2022) (explaining that, "with regard to the 'good faith' and 'good cause' prongs of section 320.641(3)[,] . . . Florida courts would likely apply 'principles of contract law when analyzing whether a termination was in good faith under Fla. Stat. § 320.641(3)'" (quoting *Cent. Buick, GMC, Inc. v. Gen. Motors LLC*, No. 15-CV-2393, 2017 WL 2819807, at *5 (M.D. Fla. June 28, 2017))).

Defendant argues that the record is devoid of evidence creating a genuine issue of material fact that Defendant did not act in good faith in terminating the Dealer Agreements [ECF No. 247 pp. 19–21]. According to Defendant, the "uniform and consistent" requirement in Fla. Stat. § 320.641(3) "does not require that a manufacturer treat every dealer associated with alleged misconduct identically" [ECF No. 247 p. 20]. Rather, Defendant argues, the manufacturer is required to show only what it has shown in this case on this issue—that it treated similarly situated "dealers in a uniform and consistent manner," and that it did not "single[] out any particular dealer for disparate treatment using criteria not applied to other dealers" [ECF No. 247 p. 20]. Plaintiffs urge otherwise, saying that Defendant waited over two years to pursue termination based on the Sex Crime—and only after Defendant started claiming that Plaintiffs committed unrelated fraud [ECF No. 260 pp. 14–15 (citing deposition testimony suggesting that Defendant's decision to terminate Plaintiffs based on fraud and sexual misconduct occurred at the same time in the same meeting, in cumulative fashion)]. Plaintiffs also argue that "HMA cannot show it has acted in a uniform and consistent manner" [ECF No. 260 p. 21], pointing to one other scenario with a

different franchisee embroiled in sexual misconduct allegations (Sonic Automotive), where HMA elected not to terminate the Dealer Agreement [ECF No. 260 pp. 20–21]. Defendant then distinguishes the Sonic Automotive situation, pointing out that the CEO of the Sonic dealership did not share a name with the dealership, the misconduct was of a less extreme degree, the victim was not an employee of the dealership, and the charges against the CEO were dropped [ECF No. 247 p. 20].

Following a full review of the record, the Court determines that there is no triable issue of fact as to whether Defendant acted in bad faith or in a manner that was not uniform and consistent within the construct of Fla. Stat. § 320.641(3).

As to timing, although Plaintiffs contend that Defendant did not act in good faith because it waited over two years to pursue official termination based on the sexual misconduct of Edward W. Napleton (and only after Defendant started claiming that the dealerships were engaged in a fraudulent scheme) [ECF No. 260 p. 15], the undisputed record shows that Defendant was not aware of the sexual misconduct until February 2019 when Edward W. Napleton was arrested [ECF No. 245 ¶ 21]. At that point, and in the period that followed, Defendant went through the process of allowing the facts to develop; monitoring updates and changes in the Edward W. Napleton case; learning about the civil lawsuit filed by Jane Doe in June 2019 and the subsequent press conference [ECF No. 245 ¶¶ 25–26]; then learning about the April 2020 whistleblower lawsuit related to the Sex Crime [ECF No. 245 ¶ 27]; attempting to gather information from Plaintiffs; and hosting internal meetings to review the Sex Crime allegations and the impairment to HMA's brand reputation—ultimately initiating a series of written communications with Plaintiffs beginning in November 2020 until official termination in March 2021 (with multiple letters exchanged in between [ECF Nos. 245-10, 245-11, 245-12, 245-13, 245-14, 245-15, 245-

16]; *see also* ECF No. 275 pp. 8–9]. No reasonable juror would find bad faith on the basis of this chronology.

As to Plaintiffs' related allegation that Defendant's "reputational harm" termination decision really was just a pretext for unrelated fraud allegations against Plaintiffs [*see* ECF No. 289 p. 39], the record does not yield a triable issue of fact on that basis. True, Defendant made the decision to issue the initial notices of default for "reputational harm" at the same November 13, 2020, meeting during which Defendant decided to send an immediate notice of termination for warranty fraud allegations as to one of the two dealerships (the WP Napleton Dealership) [*see* ECF No. 275 p. 8; ECF No. 260 p. 15; ECF No. 246-9 pp. 26–29].[9] But that circumstance, without more, does not establish a genuine dispute of material fact that Defendant acted pretextually or in bad faith in terminating the Dealer Agreements for the harm to its reputation based on the Sex Crime [ECF No. 275 pp. 8–9]. Plaintiffs do not supply any other evidence to suggest that Defendant's decision to terminate the Dealer Agreements based on reputational harm was merely a smokescreen for the warranty fraud issues concerning WP Napleton, and mere conjecture is not enough to overcome a motion for summary judgment. *Glasscox*, 903 F.3d at 1213.[10]

---

[9] To terminate on the basis of Section 16.B.2.h as took place in the Reputational Harm Case, Defendant first had to send a notice of default and provide a 30-day cure period [ECF No. 245-3 p. 19], whereas to terminate on the basis of alleged warranty fraud under Section 16.B.1, Defendant was authorized to issue an immediate notice of termination, which Defendant did [ECF No. 8-6].

[10] Further, as Defendant highlights, Plaintiffs' pretext theory is undercut by the undisputed record. Defendant sent initial notices of default to Plaintiffs on November 20, 2020, giving Plaintiffs "30 days to remedy the situation [related to the reputational harm] to HMA's satisfaction" [ECF No. 275 pp. 8–9]. "HMA could have then terminated Plaintiffs as soon as December 20, 2020, when the cure period expired" [ECF No. 275 p. 9]. Yet Defendant did not take such action, electing instead to meet again in January 2021 to consider potential termination [ECF No. 275 p. 9; *see also* ECF No. 273 (verified interrogatory responses concerning HMA's meetings regarding Notices of Termination)]. Then, following that January 2021 meeting, Defendant issued another letter on January 11, 2021, giving Plaintiffs a second opportunity to cure HMA's concerns regarding reputational harm—a step Defendant was not required to offer under the parties' Dealer

Finally, Plaintiffs advance a theory that Defendant treated Plaintiffs inconsistently in violation of Fla. Stat. § 320.641(3), pointing to the Sonic Automotive scenario described above [ECF No. 260 p. 21].  But as Defendant observes, the Sonic Automotive scenario concerned sexual assault allegations against the CEO that were later retracted (which did not happen here); the criminal charges were dismissed (which did not happen here); the accused CEO did not share a name with the dealership (as was the case here); the victim was not an employee of the company (as was the case here); nor did the alleged crime take place during a business event (as was the case here) [ECF No. 247 pp. 20–21; ECF No. 275 pp. 10–11].  Plaintiffs offer no evidence to rebut these clear factual differences.  Moreover, HMA still sent a letter to the Sonic dealer in that scenario, requesting information about the sexual misconduct allegations and citing Section 16.B.2 of the Dealer Agreement, similar to HMA's November 20, 2020 letter to Plaintiffs [ECF No. 247].  This fact further supports Defendant's point that it treated Plaintiffs in a consistent manner as it confronted other situations involving sexual misconduct, even if the language in the letters to Plaintiffs was not completely identical to the letter HMA sent to Sonic Automotive.  Plaintiffs do not provide any other evidence demonstrating that Defendant acted inconsistently in terminating the dealerships under the relevant circumstances.

For all of these reasons, the Court agrees with Defendant that there is no triable issue of fact as to Defendant's good-faith and uniform application of its termination decisions.[11]

---

Agreements [ECF No. 275 p. 9; ECF No. 245-13 (January 11, 2021 Letter)].  This factual chronology—all subsequent to the November 2020 meeting on which Plaintiffs' base their pretext argument—undercuts the contention that HMA had already made up its mind to terminate Plaintiffs for reputational harm on November 20, 2020, when Defendant sent the initial notices of default to Plaintiffs [ECF No. 275 p. 9].

[11] At the hearing, when pressed to identify any evidence sufficient to create a question for trial on Defendant's good faith, Plaintiffs also referenced a purported "rush to judgment" and certain emails associated with that theory [ECF No. 289 pp. 35–36 (referencing ECF No. 257-13)], but

CASE NO. 21-80348-CIV-CANNON/Matthewman

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment [ECF No. 247] is **GRANTED**.

2. Plaintiffs' Motion for Reconsideration of the Order Consolidating Cases for Trial [ECF No. 291] is **DENIED AS MOOT** in light of this Order.

3. Defendant's Motion to Exclude Expert Testimony of Katharine Delahaye Paine, Edward M. Stockton, and Robert Marquez [ECF No. 244] is **DENIED AS MOOT** in light of this Order.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 6th day of March 2023.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

---

those communications concerned the warranty fraud allegations, not the reputational harm allegations, and Plaintiffs did not cite any additional evidence [*see* ECF No. 289 pp. 33–40, 51].